# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| BRADY CORPORATION and BRADY WORLDWIDE, INC., | Case No.: 2:24-cv-00265 |
| Plaintiffs, | |
| v. | |
| ERIC WOOD and TAILORED LABEL PRODUCTS, INC., | |
| Defendants. | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION
## FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFFS

Defendants Eric Wood ("Wood") and Tailored Label Products, Inc. ("TLP") (collectively, "Defendants") submit this brief in support of their Motion for Partial Summary Judgment against Plaintiffs Brady Corporation and Brady Worldwide, Inc.'s (collectively, "Brady").

## <u>INTRODUCTION</u>

After almost a year of litigation, Brady is no closer to supporting its misappropriation of trade secrets, tortious interference of contractual obligations, and civil conspiracy claims against Wood and TLP than it was when its Complaint was first filed. That is because there is no evidence to support these claims.

In the three iterations of its Complaints, Brady cites an "including, but not limited to" laundry list of purported trade secrets that Wood had access to during his employment with Brady and that are now being allegedly misappropriated by Wood and TLP. Following written discovery and depositions, Brady is no closer to identifying what purported trade secrets Wood and TLP have allegedly misappropriated. Expectedly, Brady also cannot identify how Wood and TLP are alleged to have actually misappropriated Brady's indefinite list of purported trade secrets. Brady

can only claim that because Wood had access to all of these purported trade secrets in his position with Brady, it would be difficult for him to perform his position at TLP without relying on these trade secrets, so Wood and TLP must be misappropriating them. This speculative argument is both wholly improper and without any factual support. The incontrovertible testimony from almost 20 TLP witnesses (who Brady admits would be the only witnesses to have such information) is that Wood never disclosed any Brady trade secrets to TLP and that Wood and TLP never used any Brady trade secrets. Simply put, no facts support Brady's trade secret misappropriation claims.

Brady's tortious interference with contractual obligations claim against TLP fails for similar reasons. Brady alleges that TLP tortiously interfered with the Brady-Wood Agreements. However, it is undisputed that TLP was not aware of the Brady-Wood Agreements other than the Employee Non-Compete and Non-Disclosure Agreement (the "Non-Compete Agreement") prior to Wood's hire. TLP could not have intentionally interfered with what it did not know existed. Further, Brady has not and cannot present any evidence that TLP intentionally interfered with the Non-Compete Agreement. During the interview process, TLP asked Wood to provide it with a copy of his Non-Compete Agreement with Brady. Wood did. TLP then performed its due diligence in determining that employing Wood would not violate the Non-Compete Agreement. It had no reason to do anything else. This is not intentional interference.

Brady's civil conspiracy claim alleging a conspiracy to misappropriate its trade secrets fails as a matter of law. It is preempted by the Wisconsin Uniform Trade Secrets Act, and any alleged acts after Wood's hire are barred because a corporation cannot conspire with itself. Factually, the remainder of Brady's civil conspiracy claim fails because there is no evidence that Wood and TLP agreed prior to his employment to unlawfully or improperly utilize Brady's confidential information.

Finally, there is no evidence of damages in this case. Brady alleges that Wood and TLP's

1072574\321811717.v1
07791\323792075.v2

improper actions caused a decrease in its sales in two product area for calendar years 2022, 2023, and 2024. But, Wood was not employed with TLP during almost half of the claimed period of damages. Brady cites no evidence to support causation and merely speculates about a "curious correlation" between the timing of Wood's hire by and work for TLP, and Brady's decreased sales. Speculation is not evidence. It cannot defeat a summary judgment motion. Brady's lack of causation or damages evidence defeats all of its claims.

Summary judgment is the "put up or shut up" moment in a case, and Brady has failed to put up. Wood and TLP are entitled to summary judgment.

## **PROCEDURAL POSTURE**

On February 29, 2024, Brady filed its Complaint against Wood and TLP. (ECF No. 1.) Following the meet and confer process in advance of filing a motion to dismiss as required by the Court's Pretrial Procedures Order (ECF No. 5), Brady filed its First Amended Complaint ("FAC") on May 31, 2024 (ECF No. 21). On July 3, 2024, the Court entered a Protective Order, as proposed by the Parties. (ECF No. 24.) Upon receiving the Court's approval, Wood and TLP filed a Motion to Dismiss Brady's FAC on August 8, 2024. (ECF No. 25.) On December 2, 2024, the Court entered an order granting in part and denying in part Wood and TLP's Motion to Dismiss Brady's FAC. (ECF No. 35.) On December 11, 2024, upon consideration of the Parties' joint executive summary concerning summary judgment, the Court authorized Wood and TLP's filing of a Motion for Summary Judgment. On December 17, 2024, Wood and TLP filed their Answer to Brady's FAC as to the claims that survived their Motion to Dismiss. (ECF No. 37.) On January 6, 2025, Wood and TLP filed an Amended Answer to Brady's FAC. (ECF No. 44.) On January 10, 2025, Brady filed its operative Second Amended Complaint ("SAC"). (ECF No. 47.) On January 24, 2025, Wood and TLP filed their Answer to Brady's SAC. (ECF No. 50.) Wood and TLP now file this Motion for Summary Judgment.

1072574\321811717.v1
07791\323792075.v2

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if it is one upon which a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material" facts are "outcome determinative under the governing law." *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir. 1990).

To overcome summary judgment, the nonmoving party may not simply rest upon allegations in the pleadings. Fed. R. Civ. P. 56(e); *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Instead, it must produce enough specific material facts in support of its claim to sustain its burden at trial. *Celotex Corp.*, 477 U.S. at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). To that end, the non-moving party must present evidence, not speculation and unsupported conclusions of fact to support its claim. *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146–47 (7th Cir. 1994.) A mere scintilla of evidence does not create a triable issue of material fact. *See, e.g.*, *Murphy v. ITT Technical Services, Inc.*, 176 F.3d 934, 936 (7th Cir. 1999). Moreover, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Richter v. Hook-SuperX*, 142 F.3d 1024, 1027 (7th Cir. 1998) (citing *Anderson*, 477 U.S. at 247–48). The factual dispute must be material. *Id.* Defendants do not have to disprove the plaintiff's claim to show that they are entitled to summary judgment; they need only point to the absence of evidence supporting the claim. *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168 (7th Cir. 1996)

4

(holding defendants are "under no obligation to negate the plaintiffs' claim" to prevail on summary judgment). Summary judgment requires the party with the burden of proof to "put up or shut up," pointing to evidence from which a reasonable jury could find in its favor of each element of its claim. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020).

## ARGUMENT

## I.     BRADY FAILED TO SPECIFICALLY IDENTIFY ANY ALLEGEDLY MISAPPROPRIATED TRADE SECRETS.

Brady brings parallel trade secret claims against Wood and TLP under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the Wisconsin Uniform Trade Secrets Act ("WUTSA"), Wis. Stat. § 134.90. The first question that must be answered in assessing any trade secret claim is whether Brady has identified any trade secrets at all. Many plaintiffs allege trade secret misappropriation, but few prove it. *Kuryakyn Holdings v. Ciro*, 242 F. Supp. 3d 789, 800 (W.D. Wis. 2017). "[I]t is hard to prove that particular information qualifies as a trade secret." *Id.* (quoting *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002)).

To survive summary judgment, Brady must identify specific documents or information that constitute trade secrets, not simply list categories or general topics of information. *Id.* (citing *Marine Travelift, Inc. v. Marine Lift Sys., Inc.*, No. 10-cv-1046, 2013 U.S. Dist. LEXIS 170825, 2013 WL 6255689, at *6 (E.D. Wis. Dec. 4, 2013)). A plaintiff must do more than simply identify categories of information and then "invite the court to hunt through the details in search of items meeting the statutory definition." *IDX Sys. Corp.*, 285 F.3d at 584 (citing *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992)). Plaintiffs must identify the purported trade secret with "a high level of specificity." *REXA, Inc. v. Chester*, 42 F.4th 652, 663 (7th Cir. 2022). Plaintiffs cannot escape their burden of proof with a conclusory statement that "everything" is a trade secret. *DF Inst., LLC v. Dalton Educ., LLC*, No. 19-cv-452-jdp, 2020 U.S.

1072574\321811717.v1
07791\323792075.v2

Dist. LEXIS 143594, 2020 WL 4597122, at *13 (W.D. Wis. Aug. 11, 2020).

It is not enough for a plaintiff to assert, as Brady does here, that among the information the defendant had access to are various trade secrets and then leave it to the jury to decide which items of information were disclosed and whether they fit the statutory definition of a trade secret. *Marine Travelift, Inc. v. Marine Lift Sys., Inc.*, No. 10-cv-1046, 2013 U.S. Dist. LEXIS 170825, 2013 WL 6255689, at *16 (E.D. Wis. Dec. 4, 2013). The court in *Travelift, Inc.* stated:

> It is unreasonable and unfair to force a defendant to trial without even knowing specifically what information the plaintiff claims constitutes the trade secrets the defendant is alleged to have misappropriated. *Id.* It is unreasonable because if a plaintiff cannot identify the information the defendant disclosed and demonstrate that it can offer evidence from which a jury could conclude the information constitutes a trade secret, there is no need for a trial. It is unfair because a defendant should not have to guess what information the plaintiff claims was disclosed and see for the first time at trial the evidence the plaintiff has to prove it fits the definition of a trade secret.

*Id.* at *16–17. "It is entirely unfair for a plaintiff to identify general categories of what may constitute a trade secret and essentially force the defendant to guess what may be at issue until a jury trial." *Staffworks Group-Wisconsin Inc. v. Serv. First Staffing*, *30 (E.D. Wis. June 29, 2020).

In *IDX Systems*, the district court granted the defendants' motion for summary judgment on the plaintiff's trade secret misappropriation claim after concluding that the plaintiff "had failed to identify with specificity the trade secrets that it accuses the defendants of misappropriating." 285 F.3d at 583. There, the plaintiff had produced a 43-page description of the methods and processes underlying and the inter-relationships among various features making up its software package and argued that was specific enough to survive summary judgment. *Id.* The Seventh Circuit Court of Appeals agreed with the district court that the plaintiff failed to identify its alleged trade secrets with specificity. *Id.* The court noted that the plaintiff "has been both too vague and too inclusive, effectively asserting that all information in or about its software is a trade secret." *Id.*

6

In *Marine Travelift, Inc. v. Marine Lift Sys.*, this Court granted summary judgment where the plaintiff provided even less specificity as to its purported trade secrets than the plaintiff in *IDX Systems*. 2013 U.S. Dist. LEXIS 170825, at *18–19. There, the plaintiff alleged that its trade secrets fell under two categories, engineering and manufacturing, and listed several subcategories of information under the general categories. *Id.* at *18. For example, under "engineering," the plaintiff listed: "structure information/design criteria," "engineering calculations," "steering information and specifications/design criteria," "duty cycle criteria and information," "performance testing data," and "safety factors in machine and components." This Court held that other than these "general topics," the plaintiff "failed to identify any specific document or item of information constituting a trade secret that it claims [the defendant] disclosed" and granted the defendant's motion for summary judgment as to the misappropriation of trade secrets claim. *Id.* at *19.

These courts are not alone in granting summary judgment where a plaintiff fails to identify their purported trade secrets with the requisite specificity. *See, e.g., ABC Acquisition Co., LLC v. AIP Prods. Corp.*, 18 CV 8420, 2020 U.S. Dist. LEXIS 143298, at *35 (N.D. Ill. Aug. 11, 2020) (rejecting plaintiff's identification of "confidential pricing information, processes, customer buying history and needs, and drawings" as "too vague to allow a trier of fact to analyze whether any of the other elements of [the plaintiff]'s claim have been met"); *Weather Shield Mfg. Inc. v. Drost*, 17-cv-294-jdp, 2018 U.S. Dist. LEXIS 135456, 2018 WL 3824150, at *2 (W.D. Wis. 2018) (denying plaintiff's motion for summary judgment on its trade secret misappropriation claim where the plaintiff argued that "all strategic plans, customer data, and pricing information constitute trade secrets as a matter of law," concluding that the plaintiff failed to "identify the specific information that it alleges contains trade secrets," and "[i]t is [the plaintiff]'s

1072574\321811717.v1
07791\323792075.v2

responsibility, not the court's to pin down the specific information that [plaintiff] considers a trade secret").

In this case, Brady comes to the summary judgment stage with significantly less specificity as to its purported trade secrets that Wood and TLP allegedly misappropriated than the plaintiffs in *IDX Systems* and *Marine Travelift*. Brady only offers vague, generalized descriptions of its purported trade secrets without demonstrating that any specific piece of information meets the statutory definition of a trade secret.

Brady's Second Amended Complaint alleges that: "Brady has trade secrets, including, but not limited to, its customer lists, customer usages and requirements, production costs, customer-specific pricing structures and other related pricing information, and other trade-secret information contained within Brady's Market Requirement Documents, Product Requirement Documents, and "Gate 3 Deliverables," and that Wood and TLP misappropriated these trade secrets. (ECF No. 47, ¶¶ 148, 151, 153, 161, 164, 166.) In Brady's Responses to Wood's and TLP's Interrogatories, Brady did not identify purported trade secrets of Brady that it contends TLP misappropriated. (Swinick Decl., Exh. 11 (Response No. 3), Exh. 12 (Response No. 5).) Instead, Brady lists only purported trade secrets Wood had access to during his employment with Brady, including Brady's strategic plans, manufacturing methods, customer lists, customer usages and requirements, customer needs and feedback, pricing and cost structures, expected margins, product requirements, design and prototype options, project schedules, budgets, market opportunities and assessments and go-to-market strategies. (*Id.*)

In Brady's Responses to TLP's and Wood's Requests for Admission, Brady admits "that it is unaware of which specific Brady trade secrets" Wood is alleged to have disclosed to TLP. (Swinick Decl. Exh. 9 (Response No. 8); Exh. 10 (Response No. 10).) Brady admits "that it is

unaware of which specific Brady trade secrets" it alleges have been or are being misappropriated by TLP. (*Id.* at Exh. 9 (Response No. 10); Exh. 10 (Response No. 13).) Brady admits "that it is unaware of which specific Brady trade secrets" it alleges have been or are being misappropriated by Wood. (*Id.* at Exh. 9 (Response No. 11); Exh. 10 (Response No. 12).)

In its Rule 30(b)(6) deposition, Brady fared no better in identifying its specific purported trade secrets allegedly misappropriated by Wood and TLP. (Swinick Decl. Exh. 4, 75:9–17, 81:13 – 82:7, 82:18 – 83:11.) Brady could not identify specific customer lists, customer usages and requirements, production costs, customer-specific pricing structures, or other related pricing information of Brady that Wood has allegedly disclosed to TLP. (*Id.*, 81:13 – 82:7.) Brady could not identify specific purported trade secrets from Brady's Market Requirement Documents, Product Requirement Documents, and "Gate 3 Deliverables" that Wood has allegedly disclosed to TLP. (*Id.*, 82:18 – 83:11.) Brady could not even identify confidential information allegedly disclosed by Wood to TLP. (*Id.*, 75:9–17, 81:13 – 82:7, 82:18 – 83:11, 86:21 – 87:1.)

Almost a year into this litigation and over a year-and-a-half since Wood joined TLP, Brady still points only to an "including, but not limited to" laundry list of its purported trade secrets that leaves Wood and TLP wondering what, exactly, the supposed trade secrets are that they are alleged to have misappropriated. Because Brady fails to specifically identify a single trade secret that Wood and TLP are alleged to have misappropriated, they are entitled to summary judgment on Brady's DTSA and WUTSA trade secret misappropriation claims.

## II.    IN ADDITION TO LACKING ANY EVIDENCE REGARDING THE SPECIFIC ALLEGED TRADE SECRETS AT ISSUE, BRADY OFFERS NO FACTS DEMONSTRATING MISAPPROPRIATION.

Even if Brady has sufficiently identified the purported trade secret(s) that it alleges Wood and TLP have misappropriated—it has not—Brady cannot present any facts that Wood or TLP

1072574\321811717.v1
07791\323792075.v2

have misappropriated the purported trade secret(s). Under the DTSA and WUTSA, Brady must prove misappropriation by showing either "unauthorized acquisition, disclosure, or use of a trade secret." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 576 (7th Cir. 2020); Wis. Stat. § 134.90(2)(a)-(b); Joint Proposed Jury Instructions "Trade Secrets – Misappropriation of a Trade Secret." The undisputed evidence in the record fails to establish that Wood disclosed or used Brady's purported trade secrets. The undisputed evidence in the record fails to establish that TLP had knowledge of, let alone "acquired," "disclosed," or "used" Brady's purported trade secrets.

## A. Brady Has No Evidence to Support Its Misappropriation-By-Disclosure Claim.

Brady's misappropriation-by-disclosure claim fails because it can point to no evidence that Wood ever disclosed its purported trade secrets to TLP. Such a lack of evidence dooms a plaintiff's trade secret misappropriation claim. *LiiON, LLC v. Vertiv Group Corp.*, Case No. 18-cv-6133, 2021 U.S. Dist. LEXIS 205455, 2021 WL 4963610, at *23–25 (N.D. Ill. Oct. 26, 2021).

In *LiiON, LLC*, the plaintiff contended that the defendant misappropriated its trade secrets, in part, by disclosing them. *Id.* In opposition to the defendant's motion for summary judgment, the plaintiff supported its misappropriation-by-disclosure claim by asserting that their alleged trade secret began showing up in a competitor's products, and that the only link for the competitor to receive such trade secrets was through the defendant. *Id.* at *23. The Northern District of Illinois granted summary judgment to the defendant as to the plaintiff's trade secret misappropriation claim because the record contained no testimony from the employees of the defendant or the competitor indicating that the defendant gave the plaintiff's alleged trade secrets to the competitor, and the plaintiff's own witnesses testified that they had no knowledge of any information or documents indicating that the defendant shared any of the plaintiff's proprietary information with the competitor. *Id.* at *23–25. That court held that no reasonable jury could

10

find misappropriation on that record. *Id.* at *25. Such is the case here.

Fifteen employees of TLP and one former employee of TLP who reported to Wood or reported to the individuals who reported to Wood and Wood himself testified that Wood has not disclosed to TLP any information regarding Brady's strategic plans, manufacturing methods, customer lists, customer usages and requirements, customer needs and feedback, pricing and cost structures, expected margins, product requirements, design and prototype options, project schedules, budgets, market opportunities and assessments, go-to-market strategies, or any other proprietary Brady information. (Wood Decl. ¶ 60; Bence Decl. ¶ 57; Schulz Decl. ¶ 13; G. Bence Decl. ¶ 13; Klaus Decl. ¶ 7; Wittig Decl. ¶ 7; Antos Decl. ¶ 7; Hackbarth Decl. ¶ 7; Sack Decl. ¶ 7; Lee Decl. ¶ 7; Gunkel Decl. ¶ 8; Greuel Decl. ¶ 8; Becht-Soliday Decl. ¶ 7; Petersen Decl. ¶ 7; Schinker Decl. ¶ 6; Nelson Decl. ¶ 7; Lavery Decl. ¶ 7; Blickley Decl. ¶ 12.) Brady can present no evidence to the contrary.

In both its Initial Disclosures and its discovery responses, the only witnesses Brady identifies as being able to testify concerning any disclosure or use of Brady's trade secrets by Wood or TLP are Wood and TLP. (Swinick Decl. Exh. 11 (Response No. 1), Exh. 12 (Response No. 1), Exh. 13; Shaller Dep. 20:23 – 22:25, 23:11–18, Exh. 2.) No witnesses in Brady's control are identified as having any information relating to Wood and/or TLP's alleged use and disclosure of Brady's purported trade secrets. (*Id.*) Brady's Rule 30(b)(6) deponent offered no such testimony. (Swinick Decl. Exh. 4, 81:13 – 83:11.) In reference to purported trade secret information contained within Brady's Market Requirement Documents, Product Requirement Documents, and Gate 3 Deliverables, when asked: "So does Brady have evidence that Wood has actually disclosed any of this information to TLP?" Brady responded: "We don't." (Swinick Decl. Exh. 3, 27:17 – 28:22.) That, alone, is dispositive of Brady's DTSA and WUTSA trade secrets

1072574\321811717.v1
07791\323792075.v2

misappropriation claims.

The unrebutted testimony in this case is that Wood never disclosed Brady's purported trade secrets to TLP and that Wood and TLP never used Brady's purported trade secrets, and Brady has no testimony saying differently. Given the utter lack of any facts conflicting with this unrebutted testimony, summary judgment on Brady's DTSA and WUTSA trade secret misappropriation claims is necessary. *N. Highland Inc. v. Jefferson Mach. & Tool Inc.*, 2017 WI 75, ¶¶ 42–43, 377 Wis. 2d 496, 898 N.W.2d 741 (dismissing trade secret misappropriation claim where plaintiff requested an inference of disclosure of trade secret, but the record was bare as to any actual disclosure). Brady lacks sufficient evidence to raise a triable issue of fact on its trade secret misappropriation-by-disclosure claims under the DTSA and WUTSA. Accordingly, this Court should grant Wood and TLP's Motion for Summary Judgment as to these claims.

**B.     Brady Has No Evidence to Support Its Misappropriation-By-Acquisition Claim.**

Brady makes no allegations that Wood improperly acquired its purported trade secrets. This is because Wood properly acquired knowledge of Brady's purported trade secrets through his employment with Brady. Wood did not retain any hard copies of documents or data in electronic form that contained or was a trade secret of Brady after the end of his employment with Brady. (Wood Decl. ¶¶ 15–16, 18.) Wood did not engaged in any unauthorized transfer of Brady trade secrets or confidential information prior to the end of his employment with Brady. (Wood Decl. ¶ 17.) Brady admits as much. (Swinick Decl. Exh. 4, 75:19 – 76:1.)

Brady, however, alleges that "Through its employment of Wood, TLP has improperly acquired" its purported trade secrets. (ECF No. 47, ¶¶ 153, 166.) Brady's misappropriation-by-acquisition claim against TLP is necessarily dependent upon its misappropriation-by-use claim against Wood. As stated above, there is no evidence that Wood disclosed any of Brady's purported

12

trade secrets to TLP. It logically follows that if Wood did not disclose Brady's purported trade secrets to TLP, TLP did not improperly acquire Brady's purported trade secrets from Wood. Brady lacks sufficient evidence to raise a triable issue of fact on its trade secret misappropriation-by-acquisition claims under the DTSA and WUTSA. Accordingly, this Court should grant Wood and TLP's Motion for Summary Judgment as to these claims.

### C. Brady Has No Evidence to Support Its Misappropriation-By-Use Claim.

Brady's misappropriation-by-use theory is similarly deficient and fails. On the theory of improper use, courts interpret "use" broadly as: marketing goods that embody the trade secret, employing the trade secret in manufacturing or productions, relying upon the trade secret for research or development, or soliciting customers through use of information that constitutes a trade secret. *LiiON, LLC*, 2021 U.S. Dist. LEXIS 205455, at \*19 (citing *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 436 F. Supp. 3d 1150, 1165 (N.D. Ill. 2020)). Critically, Brady cannot identify any use of its purported trade secrets by Wood and/or TLP other than "they must be using them." Brady admitted as much, identifying only the purported trade secrets Wood had access to and assuming, without more, that "It would be hard to do his current job at TLP [without] leveraging some of that." (Swinick Decl. Exh. 4, 82:18 – 83:11, 86:8–13.)

Fifteen employees of TLP and one former employee of TLP who reported to Wood or reported to the individuals who reported to Wood and Wood have testified that in his role as President of TLP, Wood has not used, implemented, or otherwise utilized any Brady information regarding Brady's strategic plans, manufacturing methods, customer lists, customer usages and/or requirements, customer needs and feedback, pricing and cost structures, expected margins, product requirements, design and prototype options, project schedules, budgets, market opportunities and assessments, go-to-market strategies, or any other proprietary Brady information. (Wood Decl. ¶

1072574\321811717.v1
07791\323792075.v2

61; Bence Decl. ¶ 59; G. Bence Decl. ¶ 15; Schulz Decl. ¶ 15; Blickley Decl. ¶ 14; Antos Decl. ¶ 9; Wittig Decl. ¶ 9; Hackbarth Decl. ¶ 9; Sack Decl. ¶ 9; Lee Decl. ¶ 9; Nelson Decl. ¶ 9; Gunkel Decl. ¶ 10; Greuel ¶ 10; Becht-Soliday Decl. ¶ 9; Petersen Decl. ¶ 9; Schinker Decl. ¶ 8; Lavery Decl. ¶ 9; Klaus Decl. ¶ 9.) Fifteen employees of TLP and one former employee of TLP who reported to Wood or reported to the individuals who reported to Wood and Wood testified that they have not knowingly used, implemented, or otherwise utilized any Brady information regarding Brady's strategic plans, manufacturing methods, customer lists, customer usages and/or requirements, customer needs and feedback, pricing and cost structures, expected margins, product requirements, design and prototype options, project schedules, budgets, market opportunities and assessments, go-to-market strategies, or any other proprietary Brady information. As stated above, Brady can present no evidence to the contrary. (Wood Decl. ¶ 62; Bence Decl. ¶ 58; Schulz Decl. ¶ 14; G. Bence Decl. ¶ 14; Klaus Decl. ¶ 8; Wittig Decl. ¶ 8; Antos Decl. ¶ 8; Hackbarth Decl. ¶ 8; Sack Decl. ¶ 8; Lee Decl. ¶ 8; Gunkel Decl. ¶ 9; Greuel Decl. ¶ 9; Becht-Soliday Decl. ¶ 8; Petersen Decl. ¶ 8; Schinker Decl. ¶ 7; Nelson Decl. ¶ 8; Lavery Decl. ¶ 8; Blickley ¶ 13.) Brady's witnesses have no information regarding misappropriation of its purported trade secrets. (Swinick Decl. Exh. 4, 78:14 – 79:10, 81:9–12, 86:14–20.) Brady can only state that *if* Wood disclosed to TLP Brady's customers lists, pricing, margins, go-to-market, and *if* TLP pursued customer accounts using that information TLP would have misappropriated Brady's purported trade secrets. (*Id.*, 78:14–21, 81:9–12.)

This lack of evidence dooms Brady's misappropriation claims based on a "use" theory. *See, e.g., LiiON, LLC*, 2021 U.S. Dist. LEXIS 205455, at *20; *Saniteq, LLC v. GE Infrastructure Sensing, Inc.*, No. CV17771SJFARL, 2018 U.S. Dist. LEXIS 156629, 2018 WL 4522107, at *9 (E.D.N.Y. July 12, 2018) (granting summary judgment based upon a "use" theory in part because

the plaintiff's fact witness admitted he had no knowledge that the defendant used the plaintiff's trade secrets), *report and recommendation adopted*, No. 17-CV-771 (SJF)(ARL), 2018 U.S. Dist. LEXIS 156465, 2018 WL 4357475 (E.D.N.Y. Sept. 13, 2018). Brady lacks sufficient evidence to raise a triable issue of fact on its trade secret misappropriation-by-use claims under the DTSA and WUTSA. Accordingly, this Court should grant Wood and TLP's Motion for Summary Judgment as to these claims.

## III. THE INEVITABLE DISCLOSURE DOCTRINE IS INAPPLICABLE TO THIS CASE.

Brady's theory of trade secret misappropriation liability boils down to a requested application of the inevitable disclosure doctrine—not that Wood or TLP *have* misappropriated Brady's purported trade secrets, but that Wood and TLP *must have* misappropriated them or *will* misappropriate them if they have not already. As explained below, the inevitable disclosure doctrine is an improper theory of liability for trade secret misappropriation, and Wood and TLP should be granted summary judgment on Brady's DTSA and WUTSA claims accordingly.

Trade secret law must strike a balance between preserving an employee's right to "pursue their livelihoods when they leave their current positions" and protecting the "standards of commercial morality" and "encouraging invention and innovation." *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1268 (7th Cir. 1995) (citations omitted). The "Inevitable Disclosure Doctrine" exacerbates this tension in trade secret law as a claim under inevitable disclosure does not attempt to redress actual misappropriation, "but the mere threat that [misappropriation] will occur." *Id.*

As an initial matter, the DTSA bars inevitable disclosure claims. The explicit language of the statute precludes the imposition of injunctive relief for an actual or threatened misappropriation based "merely on the information the person knows." 18 U.S.C. § 1836(b)(3)(A)(i)(I).

1072574\321811717.v1
07791\323792075.v2

> In a civil action brough under this subsection with respect to the misappropriation of a trade secret, a court may prevent a person from entering into an employment relationship, *and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows.*

*Id.* (emphasis added). This conclusion is consistent with recent district court decisions in the Seventh Circuit which have found that "[w]hile 'inevitable disclosure can be a viable theory under state law, it appears to be foreclosed for claims under the DTSA." *WCG Clinical, Inc. v. Sitero, LLC*, No. 1:24-cv-01080-JRS-MKK, 2025 U.S. Dist. LEXIS 7696, 2025 WL 107662, at *8 (S.D. Ind. Jan. 15, 2025) (citing *Aon PLC v. Alliant Ins. Servs., Inc.*, No. 23-CV-03044, 2023 U.S. Dist. LEXIS 102153, 2023 WL 3914886, at *5 (N.D. Ill. June 9, 2023)); *see also Admiin Inc. v. Kohan*, No. 23-CV-04430, 2023 U.S. Dist. LEXIS 124147, 2023 WL 4625897, at *12 (N.D. Ill. July 19, 2023).

The WUTSA does not discuss or otherwise mention inevitable disclosure. *See* Wis. Stat. § 134.90. Wisconsin state courts have not recognized the inevitable disclosure doctrine. *See, e.g., Square D Co. v. Van Handel*, Case No. 04-C-775, 2005 U.S. Dist. LEXIS 21480, 2005 WL 2076720, at *23–24 (E.D. Wis. Aug. 25, 2005) (criticizing inevitable disclosure theory as inconsistent with the importance of worker mobility and written employment covenants); *Clorox Co. v. S.C. Johnson & Son, Inc.*, 627 F. Supp. 2d 954, 967 (E.D. Wis. 2009) ("The parties have yet to cite a Wisconsin court that has addressed whether the inevitable disclosure theory is viable under Wisconsin's trade secret laws."). But, the inevitable disclosure doctrine is generally antithetical to employee mobility as it prevents workers from changing employers solely based on what their former employer holds in confidence rather than any actual misappropriation. To hold otherwise would "force a departing employee to perform a prefrontal lobotomy on himself . . . . It would disserve the free market goal of maximizing available resources to foster competition. . . . It would

16

not strike a proper balance between the purposes of trade secret law and the strong policy in favor of fair and vigorous business competition. *AMP, Inc. v. Fleischhacker*, 823 F.2d 1199, 1205 (7th Cir. 1987) (quoting *Fleming Sales Co. v. Bailey*, 611 F. Supp. 507, 514 (N.D. Ill. 1985)).

The Seventh Circuit's most notable review of inevitable disclosure appears in *PepsiCo, Inc.*, while the remaining salient opinions addressing the issue primarily derive from district court decisions. Each of these cases from within the Seventh Circuit, however, apply inevitable disclosure only to equitable relief, as opposed to some other remedy. *See, e.g., PepsiCo, Inc.* 54 F.3d 1262 (preliminary injunction); *Elevance Health, Inc. v. Mohan*, No. 1:23-cv-01497-SEB-MJD, 2023 U.S. Dist. LEXIS 164105, 2023 WL 6049674 (S.D. Ind. Sep. 15, 2023) (temporary restraining order); *AL-KO Axis, Inc. v. Revelino*, No. 3:13-CV-1002 JD, 2013 U.S. Dist. LEXIS 203738, 2013 WL 12309288 (N.D. Ind. Oct. 25, 2013) (preliminary injunction); *Admiin Inc.*, 2023 U.S. Dist. LEXIS 124147 (temporary restraining order) *Arjo, Inc. v. Handicare USA, Inc.*, No. 18 C 2554, 2018 U.S. Dist. LEXIS 183037, 2018 WL 5298527 (N.D. Ill. Oct. 25, 2018) (preliminary injunction).

No cases in the Seventh Circuit have relied on inevitable disclosure to assess a trade secret misappropriation claim on summary judgment. This logic tracks given that the alleged trade secret misappropriation is speculative under the inevitable disclosure doctrine, and speculation is not enough to create a genuine issue of fact for purposes of summary judgment. *Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017). Brady's trade secret misappropriation claim against Wood and TLP is pure speculation. Brady's position is that Wood misappropriated its purported trade secrets simply by carrying them away in his head. (Swinick Decl. Exh. 4, 77:3–8, 86:8–13.) Brady believes that disclosure of its trade secrets is inevitable if Wood works for a competitor of Brady. (*Id.*, 77:10–25.) Brady cannot identify how Wood has allegedly misappropriated Brady's

1072574\321811717.v1
07791\323792075.v2

purported trade secrets—only that "It would be hard to do his current job at TLP [without] leveraging" the information Wood encountered in his role at Brady. (*Id.*, 82:18 – 83:11, 86:8–13.) Brady's trade secret misappropriation claims fail and Wood and TLP's Motion for Summary Judgment should be granted as to Brady's DTSA and WUTSA claims.

## IV. TLP DID NOT INTENTIONALLY INTERFERE WITH ANY CONTRACTUAL RELATIONSHIP BETWEEN WOOD AND BRADY.

Wood and TLP's Motion for Summary Judgment as to Brady's claim for Tortious Interference with Contractual Obligations against TLP must be granted because no reasonable jury could find that TLP intentionally interfered with Brady's Non-Compete Agreement with Wood. Under Wisconsin law a claim for tortious interference with a contract has five elements:

> (1) the plaintiff had a contract or a prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere.

*Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 44, 294 Wis. 2d 274, 717 N.W.2d 781; *see also* Joint Proposed Jury Instructions "Intentional Interference with Contractual Relationship." Interference is only actionable only if it is intentional and improper. *See Foseid v. State Bank*, 197 Wis. 2d 772, 788, 541 N.W.2d 203 (Ct. App. 1995). Brady's tortious interference claim cannot survive summary judgment because Brady can adduce no facts supporting any element of the claim.

Assuming, without conceding, that the Brady-Wood Agreements are enforceable, Brady can point to no facts that tend to show that TLP "interfered" with the contractual relationship between Wood and Brady, that the interference was intentional, or that a causal connection exists between the interference and the claimed damages. "One . . . intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing

1072574\321811717.v1
07791\323792075.v2

or otherwise causing the third person not to perform the contract[.]" *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 105, 279 N.W.2d 493 (Ct. App. 1979). "The word 'induces' refers to the situations in which A causes B to choose one course of conduct rather than another." *Augustine v. Anti-Defamation League of B'Nai B'Rith*, 75 Wis. 2d 207, 220, 249 N.W.2d 547 (1977) (quoting Restat. 2d of Torts, § 766, cmt. h). "[I]nducement operates on the mind of the person induced." *Id.* In some circumstances, a "simple request or persuasion which exerts only moral pressure *may* convey the alleged tortfeasor's desire to influence the third person not to deal with the other." *Id.* at 221 (discussing Restat. 2d of Torts, § 766, cmt. k).

Brady's claim fails because TLP did not exert even moral pressure on Wood. On January 21, 2023, Wood saw an ad on LinkedIn for TLP's President role. (Swinick Decl., Ex. 1, 136:14–17, 147:20–23, Exh. 8) Wood did not proactively search for TLP. (*Id.*, 148:7–14.) Wood submitted his resume and "Easy Apply" application for the role. (*Id.*, 149:6–17, Exh. 8.)

This alone defeats Brady's intentional interference claim. For example, in *3M v. Pribyl*, the Seventh Circuit favorably quoted the district court's conclusion that the plaintiff's tortious interference with a contract claim failed because "[t]he undisputed facts establish[ed] that Skrtic *initiated his own actions* and was not induced to do anything[.]" 259 F.3d 587, 601 (7th Cir. 2001). It is undisputed that Wood "initiated his own actions." Therefore, Brady's claim fails as a matter of law.

In addition, Brady cannot show that TLP's alleged interference with the Brady-Wood Agreements was intentional. In order for contractual interference to be intentional, "the defendant must act with a purpose to interfere with the contract." *Cudd v. Crownhart*, 122 Wis. 2d 656, 660, 364 N.W.2d 158 (Ct. App. 1985). First, it is undisputed that TLP was not aware of the Brady-Wood Agreements other than the Non-Compete Agreement until after Wood was hired because Wood did not disclose them to TLP. (Bence Decl. ¶ 36; Swinick Decl Exh. 1, 160:19 – 161:6,

224:10–13.) TLP could not intentionally interfere with what it did not know existed. Next, beginning in late January 2023, Wood began having conversations with TLP for their President position. (Swinick Decl. Exh. 1, 156:10–12; Bence Decl. ¶ 17.) On February 1, 2023, Bence requested and Wood provided Bence with a copy of his non-compete agreement with Brady. (Swinick Decl. Exh. 1, 169:11–20, 222:8–18, Exh. 2 (Exhs. 10 and 20); Bence Decl. ¶ 23.) Bence conferred with TLP's lawyers regarding Wood's non-compete agreement with Brady prior to hiring Wood. (Swinick Decl. Exh. 1, 222:19 – 223:7; Bence Decl. ¶ 30.) Based on Shaller's description of what Brady considered to be a competitor, Wood did not consider TLP to be competitive with Brady. (Swinick Decl. Exh. 1, 145:7 – 146:2; Wood Decl. ¶ 44.) TLP determined it was not competitive with Brady such that it could hire Wood. (Bence Decl. ¶ 35.) There is simply no evidence that TLP intentionally interfered with the Brady-Wood Agreements. Rather, TLP made an informed decision that it was not competitive with Brady. For this additional reasons, Brady's tortious interference claim fails.

Finally, Brady alleges that, "TLP's actions were malicious and undertaken with an intentional disregard of Brady's rights, entitling Brady to punitive damages." (Dkt. 47, ¶ 144.) Brady's claim for punitive damages fails because "[p]unitive damages cannot be awarded in the absence of other damages." *Musa v. Jefferson Cty. Bank*, 2001 WI 2, ¶ 35, 240 Wis. 2d 327, 620 N.W.2d 797. Because, as explained above, Brady's tortious interference claim cannot survive summary judgment, Brady cannot recover punitive damages.

## V. BRADY'S CIVIL CONSPIRACY CLAIM FAILS AS A MATTER OF LAW AND FACT.

Brady's tort claim for civil conspiracy must be dismissed to the extent it is based on trade secret misappropriation because it is preempted by WUTSA. The WUTSA "displaces conflicting tort law, restitutionary law and any other laws of this state providing for a civil remedy for

1072574\321811717.v1
07791\323792075.v2

misappropriation of a trade secret." Wis. Stat. § 134.90(6)(a). The plain language of Section 134.90(6)(a) makes Section 134.90 the exclusive remedy for civil claims based on the misappropriation of a statutorily-defined trade secret. *See Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 20, 294 Wis. 2d 274, 717 N.W.2d 781; *Corporate Express Office Prods. v. Brown*, 00-C-608-C, 00-C-666-C, 2001 U.S. Dist. LEXIS 260039, at *31–33 (W.D. Wis. July 18, 2001) (dismissing tortious interference with business relations and conspiracy claims as preempted by Wis. Stat. § 134.90(6)(a) to the extent they were based on trade secret misappropriation). Brady's civil conspiracy claim against Wood and TLP claims in part, that "Wood and TLP, jointly and severally, formed and operated a conspiracy to, among other things, employ Wood and utilize his knowledge of Brady's . . . trade secrets to benefit TLP as a competing enterprise." (ECF No. 47, ¶ 139.) Brady's civil conspiracy claim against TLP and Wood in this regard must be dismissed as preempted by Section 134.90(6)(a).

A "[c]ivil conspiracy involves 'a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.'" *N. Highland, Inc. v. Jefferson Mach. & Tool, Inc.*, 2017 WI 75, ¶ 25, 377 Wis. 2d 496, 898 N.W.2d 741 (quoting *City of Milwaukee v. NL Indus., Inc.*, 2005 WI App 7, ¶ 25, 278 Wis. 2d 313, 691 N.W.2d 888); Joint Proposed Jury Instructions "Conspiracy: Defined." "A civil conspiracy claim has three elements: (1) the formation and operation of a conspiracy; (2) a wrongful act or acts done pursuant to the conspiracy; and (3) damage resulting from the act or acts." *Id.* (citing *Onderdonk v. Lamb*, 79 Wis. 2d 241, 247, 255 N.W.2d 507 (1977)); Joint Proposed Jury Instructions "Conspiracy: Defined." Brady's conspiracy claim fails as a matter of law because Brady can adduce no facts supporting any element of a conspiracy claim.

In order for a conspiracy claim to survive summary judgment, "there must be facts that

1072574\321811717.v1
07791\323792075.v2

show some agreement, explicit or otherwise, between the alleged conspirators on the common end sought and some cooperation toward the attainment of that end." *N. Highland Inc.*, 2017 WI 75, ¶ 26 (quoting *Augustine v. Anti-Defamation League of B'Nai B'Rith*, 75 Wis. 2d 207, 216, 249 N.W.2d 547 (1977)). "While inferences reasonably drawn are appropriate bases for unassailable findings of fact in most cases, and the acceptance of one inference rather than another by the jury is generally a sufficient finding of fact, Wisconsin law in respect to conspiracies imposes a more stringent test." *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 162 Wis. 2d 73, 84, 469 N.W.2d 629, 633 (1991) (citation omitted). Rather, "[t]o prove a conspiracy, a plaintiff must show more than a mere suspicion or conjecture that there was a conspiracy or that there was evidence of the elements of a conspiracy." *Id.* That is, "[i]n Wisconsin, if circumstantial evidence supports equal inferences of lawful action and unlawful action, then the claim of conspiracy is not proven." *Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.*, 898 F.2d 512, 516 (7th Cir. 1990).

In its SAC, Brady alleges that "Wood and TLP, jointly and severally, formed and operated a conspiracy to, among other things, employ Wood and utilize his knowledge of Brady's confidential information and trade secrets to benefit TLP as a competing enterprise." (ECF 47, ¶ 139.) It is the uncontroverted testimony of Wood and TLP that the Defendants did no such thing. Wood engaged in multiple interviews with TLP executives, board members, and consultants. (Swinick Decl. Exh. 1, 157:2–6, 157:21 – 158:1, 158:11–17, 173:12–17, 178:15 – 179:10, 182:8 – 183:2, 183:10–18; Bence Decl. ¶¶ 19, 21, 24, 26, 28, 43; G. Bence Decl. ¶¶ 4, 6; Schulz Decl. ¶¶ 4, 6; Blickley Decl. ¶¶ 5, 7; Wood Decl. ¶¶ 24, 26, 28–29, 30, 32, 34, 36, 38, 40, 42.) Wood did not disclose Brady's Trade Secrets or Confidential Information in his interviews with TLP. (Swinick Decl. Exh. 1, 157:2–9, 158:22 – 159:3; Wood Decl. ¶¶ 25, 27, 29, 31, 33, 35, 37, 39, 41, 43; Bence Decl. ¶¶ 20, 22, 25, 27, 29, 44, 46; G. Bence Decl. ¶¶ 5, 7–8; Schulz Decl. ¶¶ 5, 7–8;

22

Blickley Decl. ¶¶ 6, 8.) Wood did not say, indicate, insinuate, or otherwise imply that he could or would disclose Brady's Trade Secrets or Confidential Information in his interviews with TLP. (Swinick Decl. Exh. 1, 162:18 – 163:5, 164:2–6; Wood Decl. ¶¶ 25, 27, 29, 31, 33, 35, 37, 39, 41, 43; Bence Decl. ¶¶ 20, 22, 25, 27, 29, 44; G. Bence Decl. ¶¶ 5, 7; Schulz Decl. ¶¶ 5, 7; Blickley Decl. ¶¶ 6, 8.) Wood did not disclose the identity of any of Brady's customers or distributors in his interviews with TLP. (Wood Decl. ¶ 48; Bence Decl. ¶ 47; G. Bence Decl. ¶ 9; Schulz Decl. ¶ 9.) Wood's employment with TLP was not predicated or conditioned upon his disclosure or use of Brady's trade secrets or Confidential Information. (Wood Decl. ¶ 49; Bence Decl. ¶ 31.) Wood's employment with TLP was not predicated or conditioned upon his disclosure or targeting of Brady customers or distributors. (Wood Decl. ¶ 50; Bence Decl. ¶ 32.) Wood specifically told TLP leadership that he could not discuss details of his time at Brady. (Swinick Decl. Ex. 1, 164:23 – 165:17.)

In *North Highland Inc.*, the Wisconsin Supreme Court affirmed summary judgment when it was "the unrebutted deposition testimony" of a defendant that he did not "share[] his knowledge of the [relevant] bid with" his alleged coconspirator. 2017 WI 75, ¶ 30. The Court found that summary judgment was appropriate even though the plaintiff insisted that, "[b]ased on [the] evidence of Wells and Trewyn's working relationship at Jefferson Machine, an inference [could] be drawn that Trewyn shared his knowledge of the Tyson bid with Wells." *Id.* The Court found that such an alleged inference was not enough—because it was the unrebutted testimony of the defendants that they did not, in fact, illicitly share bid information, "[t]here [was] no evidence of the formation and operation of a conspiracy." *Id.* Likewise, here, it is the unrebutted testimony of Wood and TLP that Wood and TLP simply did not conspire for TLP to hire Wood as its president in order for Wood to disclose Brady's trade secrets to TLP. Therefore, just as in *North Highland*

1072574\321811717.v1
07791\323792075.v2

*Inc.*, there is no evidence of the formation and operation of a conspiracy. Therefore, Defendants are entitled to summary judgment as a matter of law.

Moreover, Brady's alleged drop in sales of certain product lines is not sufficient to avoid summary judgment. In *Allen & O'Hara*, "Barrett's [conspiracy] claim relie[d] on essentially one piece of evidence: the termination of Barrett from two independent demolition contracts . . . at about the same time. Barrett claim[ed] that this unusual circumstance warrants an inference of concerted action." 898 F.2d at 516. The court found that this evidence was insufficient to support a conspiracy claim. *Id.* Likewise, here, the only evidence that Brady can point to that supports its conspiracy claims is the assertion that its sales of custom polyester and custom product ID labels—products it alleges it competes with TLP in—have been "strangely down" in calendar years 2022, 2023, and 2024. (Swinick Decl. Exh 4, 72:6 – 73:8.) Brady cannot specifically attribute the down sales to TLP. (*Id.*, 90:6–14.) Brady can only deduce that there is a "curious correlation" between Wood's employment with TLP and the alleged decrease in its sales. (*Id.*, 73:20 – 74:14.) As in *Allen & O'Hara*, this decrease in a certain sales line is "more easily explained by innocent occurrences than by a malicious conspiracy." 898 F.2d at 516 n.2.

Finally, while Brady failed to adduce evidence of a actionable conspiracy between Wood and TLP, as a matter of law, any actions taken by Wood and TLP after TLP hired Wood cannot support a claim for conspiracy. This is because an "officers' acts are acts of the corporation, and a corporation cannot conspire with itself." *Starsurgical Inc. v. Aperta, LLC*, 40 F. Supp. 3d 1069, 1078 (E.D. Wis. 2014) (citing *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990)). For instance, in *Medline Industries, Inc. v. Diversey, Inc.*, this Court found that the president of a wholly owned subsidiary could not, as a matter of law, conspire with the subsidiary's parent company "[b]ecause he was acting as an agent of, and in the interest of [the

1072574\321811717.v1
07791\323792075.v2

parent]." 563 F. Supp. 3d 894, 925–27 (E.D. Wis. 2021). For this additional reason, Brady's civil conspiracy claim fails as a matter of law.

## VI. THERE IS NO EVIDENCE THAT BRADY'S CLAIMED DAMAGES WERE CAUSED BY WOOD OR TLP.

The overarching problem with Brady's breach of contract, tortious interference with contractual obligations, civil conspiracy, and trade secret misappropriation claims are their fundamental lack of evidence that Wood or TLP caused any damage to Brady. Causation is a necessary element of each of these claims to sustain the claim, or at the very least, to recover damages. Brady fails to establish any causation between its allegations against Wood and TLP and its claimed sales decline.

### A. Causation is an Essential Element of Liability in Brady's Breach of Contract Claim.

To maintain a breach of contract claim, there must be a contract, a breach, *and damages*. *See, e.g. Brew City Redevelopment Grp., v. Ferchill Grp.*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582. "As in tort law, so in contract law, causation is an essential element of liability. If the damage of which the promisee complains would not have been avoided by the promisor's not breaking his promise, the breach cannot give rise to damages." *Wis. Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1289 (7th Cir. 1986) (internal citations omitted); Joint Proposed Jury Instructions "Consequential Damages for Breach of Contract.".

"Neither a court nor a jury as the trier of the facts can determine damages by speculation or guess work." *De Sombre v. Bickel*, 18 Wis. 2d 390, 398, 118 N.W.2d 868, 873 (1963). When "there is no credible evidence upon which the trier of fact can base a reasoned choice between the two possible inferences, any finding of causation would be in the realm of speculation and conjecture." *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 460,

1072574\321811717.v1
07791\323792075.v2

267 N.W.2d 652, 655 (1978). "Because it is impermissible to base a judgment on 'conjecture, unproved assumptions, or mere possibilities,'" Brady's conjecture that Defendants caused a dip in sales of certain Brady product lines does not create a genuine issue as to any material fact. *Id.* (quoting *Schwalbach v. Antigo Electric & Gas., Inc.*, 27 Wis. 2d 651, 655, 135 N.W.2d 263 (1965)); *see also Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) ("Inferences that rely upon speculation or conjecture are insufficient to survive summary judgment.").

### B. Causation of Damages is an Indispensable Element of Brady's Tortious Interference and Civil Conspiracy Claims.

Brady's tortious interference and conspiracy claims fail for the same reason. As with a breach of contract claim, causation and damages are indispensable elements of those claims. *See Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 44, 294 Wis. 2d 274, 717 N.W.2d 781 (explaining that an element of a tortious interference claim is "a causal connection exists between the interference and the damages"); *N. Highland, Inc. v. Jefferson Mach. & Tool, Inc.*, 2017 WI 75, ¶ 25, 377 Wis. 2d 496, 898 N.W.2d 741 (explaining that an element of a conspiracy claim is "damage resulting from the act or acts."); Joint Proposed Jury Instructions "Intentional Interference with Contractual Relationship.".

### C. To Recover Damages for Trade Secret Misappropriation Brady Must Establish Causation.

Similarly, while proving damages is not an element of a trade secret misappropriation claim, Brady must still prove that the damages it seeks were caused by Wood and TLP's alleged misappropriation of its purported trade secrets. Even though the Court may not dismiss Brady's misappropriation of trade secrets claim because of its failure to establish causation of damages, the Court may consider whether Wood and TLP are entitled to summary judgment on specific issues, including damages. *See* Fed. R. Civ. P. Rule 56(g).

1072574\321811717.v1
07791\323792075.v2

Wisconsin Statute Section 134.90(4)(a) explains that a court may award damages to the complainant "for a violation of sub. (2)." Damages may include both the actual loss "caused by the violation" and unjust enrichment "caused by the violation" that is not taken into account in computing actual loss. Wis. Stat. § 134.90(4)(a). Section 134.90(2) defines misappropriation and describes misappropriation of a trade secret. Wis. Stat. Ann. § 134.90(2)(a)-(b). Therefore, based on the plain text of the statute, damages can only be established by actual loss "caused by the misappropriation" or unjust enrichment "caused by the misappropriation." The Wisconsin Supreme Court in *World Wide Prosthetic Supply v. Mikulsky*, further supports causation and held "In order to recover for actual loss under the statute, a plaintiff must prove that its loss was *caused by* the defendant's violation." 2002 WI 26, ¶ 27, 251 Wis. 2d 45, 640 N.W.2d 764.

There is also a causation requirement in the DTSA between misappropriation and the resulting damage. *See Motorola Solutions, Inc. v. Hytera Communications Corp. Ltd.*, 108 F.4th 458, 468 (7th Cir. 2024) citing § 1836(b)(3)(B)(i) (authorizing award of damages and unjust enrichment "caused by the misappropriation."). Therefore, under both statutes, the Plaintiff must show the damages were "caused by the misappropriation."

### D. Brady's Claims Lack Evidence of Causation and Engage in Improper Speculation.

Brady contends that its sales in custom polyester and custom ID labels were "strangely down" over calendar years 2022, 2023, and 2024. (Swinick Decl. Exh. 4, 72:6 – 73:8.) Brady asserts that these are categories that Brady competes with TLP in. (*Id.*) Brady claims that it has eliminated other causes of declining sales or declining rates of growth other than competition from TLP because its sales strategy and tactics remain unchanged and its product offering remains largely unchanged. (*Id.*, 73:20–25.) Brady only cites a "curious correlation" between the timing of Wood's hire by and work for TLP and its decreased sales as direct evidence that the decline in

27

sales or rate of growth is caused by competition from TLP or anything Wood did. (*Id.*, 73:20 – 74:14.) This is all the evidence Brady possesses as to causation between its claimed damages and its trade secret misappropriation claims against Wood and TLP, its breach of contract claims against Wood, its civil conspiracy claim against Wood and TLP, and its tortious interference claim against TLP. (*Id.*, 74:16–19, 93:20 – 97:14.)

Significantly, Wood was Brady's IDS General Manager, Americas until November 18, 2022. (Swinick Decl. Exh. 1, 128:2–4; Wood Decl. ¶ 12.) Wood started as President of TLP on April 17, 2023. (Swinick Decl. Exh. 1, 180:11–12; Wood Decl. ¶ 51; Bence Decl. ¶ 45.) This is an almost 16-month period during which Wood was still working for Brady or not employed by TLP—almost half of the period during which Brady claims its sales declined. Wood's alleged breach of contract, TLP's alleged tortious interference with contractual relation, and Wood and TLP's alleged trade secret misappropriation and civil conspiracy could not possibly have caused the alleged sales decline in these categories before they are even alleged to have occurred. Because Brady has fundamentally failed to remove its theory that Defendants caused a dip in sales in certain product lines from the realm of speculation, no reasonable jury could find that Wood and TLP caused it. Accordingly, Brady's breach of contract, tortious interference, and conspiracy claims fail, it cannot establish damages for its trade secret misappropriation claims, and Wood and TLP's Motion for Summary Judgment should be granted.

## CONCLUSION

For the above-stated reasons, this Court should grant Wood and TLP's Motion for Partial Summary Judgment and dismiss with prejudice Brady's DTSA and WUTSA trade secret misappropriation, tortious interference with contractual obligations, civil conspiracy, and breach of contract claims against Wood and TLP.

1072574\321811717.v1
07791\323792075.v2

Dated this 6th day of February, 2025.

HINSHAW & CULBERTSON LLP
Attorneys for Defendants ERIC WOOD and
TAILORED LABEL PRODUCTS, INC.


*/s/ Corey J. Swinick*
Tomislav Z. Kuzmanovic
State Bar No. 1003563
Corey J. Swinick
State Bar No. 1097530
Molly K. Woodford
State Bar No. 1126884
790 N. Water Street, Suite 1950
Milwaukee, WI 53202
Phone: 414-276-6464
tkuzmanovic@hinshawlaw.com
cswinick@hinshawlaw.com
mwoodford@hinshawlaw.com

Marcos Reilly, ARDC # 6193036
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Phone No. 312-704-3779
Fax No. 312-704-3001
MReilly@hinshawlaw.com

1072574\321811717.v1
07791\323792075.v2